[Cite as *State v. Fuller*, 2020-Ohio-3804.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT**
**COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108915 |
| v. | : | |
| TYSEAN FULLER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628447-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carson Strang, Assistant Prosecuting Attorney, *for appellee*.

John B. Gibbons, *for appellant*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Tysean Fuller appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of aggravated robbery and related offenses after a jury trial. On appeal, his raises a single assignment of

error, arguing his convictions are against the manifest weight of the evidence. After a careful review of the evidence presented at trial, we affirm his convictions.

**Background**

{¶ 2}   The undisputed evidence shows that the victim in this case, Osman Baslamisli ("victim" hereafter), offered a car for sale online. Fuller's codefendant Alexander Sewell, age 18 at the time, showed up at a prearranged location and asked to test drive the vehicle before purchasing it. The victim agreed, but insisted on riding with Sewell. Sewell drove the vehicle to an area near East 193rd Street and Abby Avenue in Euclid. A man suddenly appeared with a gun. He pointed the gun at the victim and ordered him to exit the vehicle. The gunman took off with the vehicle. Sewell quickly disappeared. The victim went to a nearby business and called a family member.

{¶ 3}   While the police were at the scene investigating the incident, the stolen vehicle emerged nearby. The police pursued the vehicle through Euclid into Bratenahl, East Cleveland, and Cleveland. During the 30-minute high-speed chase, the stolen vehicle struck several vehicles on the road. The chase ended when the stolen vehicle crashed into a Euclid police cruiser near an area where the robbery took place. Sewell, who was behind the wheel, was taken into custody. The passenger of the vehicle, Fuller, escaped through the passenger side window and led the police on a foot chase. He was eventually apprehended by the police, with the victim's cell phone on his person. The police found a gun in the passenger seat of the stolen vehicle.

**{¶ 4}** During interviews with the police, Fuller denied he was the gunman. Sewell, however, cooperated with the police and implicated Fuller. Sewell and Fuller were subsequently jointly indicted in a 30-count indictment. Both Sewell and Fuller were indicted for the counts stemming from the carjacking, which included aggravated robbery, multiple counts of robbery, kidnapping, abduction, grand theft, and receiving stolen property. Sewell alone was indicted for the counts stemming from the high-speed chase.

**{¶ 5}** Sewell pleaded guilty to the offenses under a plea agreement and received a prison term of three years and nine months for his offenses. However, at trial, Sewell denied Fuller had any role in the carjacking. The state relied mainly on the text messages exchanged between Fuller and Sewell on the day of the incident to prove Fuller's role in the aggravated robbery.

**{¶ 6}** The jury found Fuller guilty of all counts charged in the indictment and the associated firearm specifications. He was sentenced to ten years in prison for his offenses.

**Appeal**

**{¶ 7}** On appeal, Fuller raises a single assignment of error for our review:

> The judgment entry of conviction and sentence against defendant-appellant, Tysean Fuller for the separate offenses of aggravated robbery, robbery, kidnapping, abduction, grand theft-motor vehicle, receiving stolen property-motor vehicle, telecommunication fraud, carrying a concealed weapon and improper handling of a firearm in a motor vehicle were all contrary to manifest weight of the evidence.

**{¶ 8}** When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A manifest weight challenge, on the other hand, questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring). This challenge raises a question of fact.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The word "manifest" in the standard of review "means that we can only reverse the trier of fact if its decision is very plainly or obviously contrary to the evidence." *State v. Hernandez*, 8th Dist. Cuyahoga No. 106577, 2018-Ohio-5031, ¶ 20.

**{¶ 9}** At the jury trial, the state presented testimony from the victim, codefendant Sewell, seven police officers, a forensic examiner who prepared a cell phone extraction report in this case, and an analysis from a state investigation

agency who prepared an exhibit showing the movement of Fuller's cell phone on the day of the incident. The defense did not present witnesses.

**Victim's Testimony**

{¶ 10} The victim testified that he offered a used Chevrolet Cruze for sale on the "OfferUp" app. An individual was interested and asked for a test drive. An arrangement was then made for them to meet at a restaurant owned by the victim's family in Mentor in the afternoon of May 19, 2017. A man, later identified as Sewell, appeared. Sewell asked to test drive and to take the vehicle to a mechanic for an examination. The victim insisted on driving with Sewell for the trip. Sewell drove the vehicle to Euclid, all the while texting and talking over the phone. He stopped at a house and someone from the house came out to look at the vehicle. The victim became so suspicious by this point that he sent his location to his wife with the message: "[t]his is my location just in case." After talking to someone for a few minutes in front of the house, Sewell said "[w]e can now go to the mechanic."

{¶ 11} As Sewell turned into a street, the victim noticed a man walking on the sidewalk on the other side of the street. Sewell suddenly drove the car towards him. The man first went to the driver's side. Sewell voluntarily opened the door. The man then leaned in and pointed a gun at the victim. He first demanded the victim's phone and took his phone as well as Sewell's phone. Sewell then exited the vehicle, and the gunman demanded the victim to get out of the vehicle as well. The gunman drove off, and Sewell quickly disappeared.

{¶ 12} The victim walked to a nearby store and contacted a family member, who arrived at the scene and called the police. While the victim was talking to the police officers, he suddenly saw his vehicle coming down the street, with two people inside. The police officers started to chase the stolen vehicle.

{¶ 13} The robbery happened so quickly that the victim could not remember the gunman's face, but he was able to identify the black and silver gun the state later retrieved from the stolen vehicle as the gun pointed at him. When the police later returned his Samsung phone to him, he saw that someone in the name of "GLOTF-MMG" used his phone to log into that person's own Instagram account and posted several pictures of himself.

**Testimony of the Police Officers and Cell Phone Analysts**

{¶ 14} Officer Michael Neibecker testified that he responded to the report of a carjacking at East 193rd Street and Abby Avenue in Euclid. While he was still interviewing the victim, the victim saw his stolen Chevy Cruze drive by. Officer Neibecker jumped into his patrol vehicle and began to pursue it. During the pursuit, the Chevy Cruze was travelling recklessly, striking five or six vehicles. The pursuit eventually ended when the Chevy Cruze struck a Euclid police cruiser on East 185th Street in Euclid. The passenger, later identified as Fuller, fled on foot but was eventually apprehended. The driver, later identified as Sewell, was removed from the vehicle by the officers. The dash camera on his police vehicle, which captured the vehicle pursuit, was played for the jury.

**{¶ 15}** Officer James Aoki testified that he participated in the vehicle pursuit of the stolen vehicle and the pursuit came to an end only after it struck his police vehicle. The passenger, Fuller, climbed out of the passenger side window and fled on foot. Officer Aoki chased him and also assisted in apprehending him while he resisted being arrested. A firearm was found in the passenger side of the vehicle.

**{¶ 16}** Officer Vashon Williams also participated in the pursuit of the suspect vehicle and assisted in apprehending Fuller. He testified Fuller struggled with several officers before being handcuffed. Officer Williams found two cell phones on Fuller's person, a blue iPhone 5C, which was subsequently determined to be Fuller's phone, and a gold Samsung, which belonged to the victim.

**{¶ 17}** Richard Johnson, a forensic examiner of the Westlake Police Department testified regarding his electronic forensic extraction of text messages exchanged on the day of the robbery between the blue iPhone found in Fuller's person and the rose gold iPhone that belonged to Sewell. The messages were shown to the jury, and they appeared to reflect the senders of the messages plotting the robbery together.[1]

---

[1] The following text messages were a portion of the messages between "Alex" — which Fuller had acknowledged to be Sewell's name in Fuller's phone — and a phone number ending in 6564, which the police had linked to Fuller's cell phone:

Alex: We go prolly have to get bitch up threw he tryna hop in with me.
Alex: I'm go pull around make him get out
* * *
Alex: U see the hamma?
6564: Yeah

{¶ 18} Daniel Serwatka, an analyst from Ohio HIDTA ("High Intensity Drug Trafficking Area"), testified regarding cellular mapping. In this case, he created a video displaying the cell tower locations associated with the cell phone that the state alleged to be Fuller's phone in the afternoon of May 19, 2017. The locations included a tower near the restaurant where Sewell met with the victim and later a tower in the area of Abby Avenue and East 193rd Street in Euclid, near where the victim was robbed.

**Detective Kroczak's Testimony**

{¶ 19} Detective Jennifer Kroczak of the Euclid Police Department was the main investigator in this case. She arrived at the scene shortly after the stolen vehicle crashed. She saw Fuller running away from the police and an officer trying to subdue Sewell, who was still in the driver's seat. A loaded gun was in plain sight

---

6564: Come grab it
* * *
Alex:  I'm talking to him still
* * *
Alex:  Should I bring him to the hood?
6564: You can or the [C]lair
* * *
Alex:  Look just follow me I'm go stop somewhere in the cut you come
        to my door make me get out take the whip
* * *
Alex:  We getting ready to leave now
6564: I'm pulling there now

Detective Kroczak testified that "hamma" refers to a gun and a "whip" is a slang term for a vehicle. Sewell also admitted "hamma" refers to a gun.

on the passenger seat. The police also found two cell phones on Fuller when he was apprehended: a blue iPhone subsequently traced to Fuller (with a phone number ending in 6564), and a gold Samsung phone belonging to the victim. In the stolen car, a rose gold iPhone was recovered from the driver's seat, which was later confirmed as belonging to Sewell. Also found in the stolen car was a digital scale and a bag containing marijuana.

{¶ 20} Approximately two hours elapsed between the robbery of the victim and the return of the stolen vehicle to the area where Officer Neibecker was taking a report from the victim. As Detective Kroczak testified, Fuller's Instagram account ("GLOTF-MMG") had been logged into on the victim's phone after the robbery and several photos of Fuller were posted in his account, including a selfie of Fuller pointing a gun and a picture of him pointing a gun barrel with a caption "We pull up and hurt shit. I shoot like Steph Curry." Detective Kroczak also testified that the OfferUp app in the victim's cellphone no longer showed the victim being the account holder in the app; rather, "GLOTF" now showed as the account holder. Furthermore, the victim's cell phone showed an inquiry not made by the victim in the Google search history regarding how to reset a Macbook Pro computer; a MacBook computer, which did not belong to the victim, was found in the stolen vehicle.

{¶ 21} Detective Kroczak interviewed Fuller twice. Portions of the interviews were played for the jury as she testified. Fuller stated he lived in "Grovewood" and admitted Sewell was listed as "Alex" in his phone contacts, but he

denied texting Sewell on the day of the robbery. As to the gun found in the passenger seat of the stolen vehicle, Fuller denied having seen the gun.

{¶ 22} Detective Kroczak interviewed Sewell on three occasions. On May 22, 2017, Sewell stated Fuller knew nothing about the robbery and he was selling weed to Fuller on the day of the incident. Subsequently, on August 24, 2017, she interviewed Sewell again with Sewell's attorney and an assistant prosecutor present. Sewell changed his account and identified Fuller as the gunman. Sewell was interviewed again on January 9, 2018, also with his attorney and the assistant prosecutor present. Sewell gave the same account as in the August 24, 2017 interview. (A videotape of the January 9, 2018 interview was played for the jury during Sewell's testimony.)

**Codefendant Sewell's Testimony**

{¶ 23} Sewell testified he was 18 at the time of the robbery. He pleaded guilty in this case and received a prison term of 3-years and nine months. He acknowledged he talked to Detective Kroczak about Fuller's involvement in this case but claimed his statements to the detective had not been truthful. In a sidebar discussion, the assistant prosecutor represented to the trial court that Sewell's denial regarding Fuller's involvement came as a complete surprise because he had talked to Sewell the day before the trial and Sewell's statements were consistent with his prior statements to Detective Kroczak, which identified Fuller as the gunman in the robbery. Over the objection from the defense counsel, the trial court granted the

state's request to declare Sewell as the court's witness and permitted the state to ask leading questions.

{¶ 24} Sewell was then asked about his prior statements to Detective Kroczak regarding Fuller's involvement in the robbery, to which he invariably replied that he did not remember. He did not remember telling the detective he knew Fuller as "Mike from Grovewood Park"; "Mike" contacted the victim on the OffUp app using the name of "Tony"; "Mike" told him to go to Mentor and introduced himself to the victim as "Anthony"; "Mike" dropped him off in Mentor to meet the victim; "Mike" communicated with him while he was test-driving the Chevy Cruze; that "Mike" was the gunman in the robbery but the gun was his (Sewell's); and he was supposed to get $200 from Fuller for his part in the robbery. The prosecutor played a video of Sewell's interview with Detective Kroczak on January 9, 2018, over the objection of the defense counsel.

{¶ 25} Sewell denied he exchanged the text messages with Fuller on the day of the robbery. When asked with whom he was exchanging the text messages, Sewell answered "I don't know. I plead the 5th." Although Sewell claimed he did not know the recipient of the text messages, he admitted "he was texting the person who was going to come out and rob the victim with the gun." He also admitted he told that person to take his (Sewell's) cell phone as well, to make it look like both him (Sewell) and the victim were robbed. He also admitted planning the robbery before meeting the victim in Mentor, but insisted he alone planned the robbery.

**Manifest Weight**

{¶ 26} Fuller claims his convictions are against the manifest weight of the evidence. In light of the overwhelming evidence produced by the state supporting his involvement in the robbery, Fuller maintains that there are no witnesses identifying him as the individual who robbed the victim at gunpoint, pointing to the inability of the victim to identify him and the testimony of the state's key witness, Sewell, who recanted his previous statements to the police and testified that Fuller had no involvement in the robbery.

{¶ 27} Our review of the evidence presented at trial reflects a thorough and comprehensive police investigation in this case. While codefendant Sewell denied Fuller's role in the robbery at trial and the victim was unable to identify Fuller as the gunman, the state produced overwhelming evidence to allow the jury to infer that Fuller was the individual who approached the stolen car and robbed the victim at gunpoint; most damning were the text messages exchanged between Sewell's phone and Fuller's phone literally revealing the planning and execution of the robbery by these two men. This evidence reflecting Fuller's involvement in the robbery is further corroborated by the cell tower data showing Fuller's phone traveling from Mentor to the area where the robbery occurred and by the state's exhibits showing Fuller logged into his own Instagram account in the victim's phone.

{¶ 28} Having reviewed the entire record, we cannot conclude that the jury in this case clearly lost its way and created such a manifest miscarriage of justice in finding Fuller guilty. This is certainly not an exceptional case where the evidence

weighed heavily against the convictions, and we decline to exercise our discretionary power to grant a new trial. The assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

SEAN C. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR